IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
In Re: Alan Brian Fabian       *
       (Chapter 7)             *
                               *
   *   *   *   *   *   *   *   *
                               *   Bankr. No. JS-09-443
Alan Brian Fabian              *
                               *   Civil Action No. WMN-11-3155
v.                             *
                               *
Zvi Guttman                    *
                               *
                               *
   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *
```

**MEMORANDUM**

Chapter 7 Debtor Alan Brian Fabian appeals from a September 13, 2011, decision of the United States Bankruptcy Court for the District of Maryland in which the Bankruptcy Court held, inter alia, that certain debts owed to the Chapter 11 bankruptcy estate of Strategic Partners International, Inc. (SPI) were non-dischargeable.  In re Fabian, 458 B.R. 235 (Bankr. D. Md. 2011).  The appeal is fully briefed.  Upon review of the papers filed and the applicable case law, the Court determines that no hearing is necessary, Fed. R. Bankr. P. 8012(3), and that the decision of the Bankruptcy Court should be affirmed.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

The factual and procedural background for the Bankruptcy Court's decision was presented in considerable detail in Bankruptcy Judge James Schneider's September 13, 2011,

Memorandum and Order and it will not be repeated here.  Briefly stated, however, the instant dispute relates back to a fraudulent scheme perpetrated by Fabian involving SPI, a corporation for which he was the sole officer, shareholder, and person in control.  Beginning in 2001, Fabian through SPI entered into a series of sale and leaseback agreements with a leasing broker, Solarcom, Inc. (Solarcom).  Under those agreements, Solarcom would locate third-party funding sources for the purchase of computer equipment and software, Solarcom would purchase the equipment and software from SPI, and then Solarcom would lease that equipment and software back to SPI.  Under Fabian's fraudulent scheme, however, in many cases the computer equipment and software either did not exist or were of an actual value significantly less than the price presented to Solarcom.  As a result of these transactions, SPI obtained approximately $32 million from Solarcom.  See In re Fabian, 458 B.R. at 243-44 (quoting Fabian's Plea Agreement dated May 12, 2008, hereinafter, "Plea Agreement").

In July of 2004, Fabian defaulted on 11 of the outstanding leases.  Of the $32 million received from Solarcom, Fabian had diverted a large portion to a for-profit entity which Fabian controlled, CMAT International, Inc. (CMAT).  Fabian also used the proceeds to purchase beach property in North Carolina, to

make donations to a private school, and for personal private jet travel.  Id. at 246 (quoting Plea Agreement).

As a result of the defaults, SPI was forced into an involuntary Chapter 7 bankruptcy by two of its creditors.  On September 27, 2004, the bankruptcy case was converted to Chapter 11 and on December 15, 2004, Zvi Guttman was appointed the Chapter 11 Trustee.  Claims filed by creditors in the SPI bankruptcy case exceeded $25 million.

As Trustee, Guttman filed 11 adversary proceedings.  These adversary actions sought the avoidance and recovery of fraudulent conveyances made by SPI to Fabian, Fabian's wife and other entities associated with Fabian.  Five of those adversary proceedings (the Remaining Proceedings) formed the basis of the action from which this appeal arose.  Fabian has acknowledged that, during the course of the bankruptcy proceedings, he gave false testimony under oath in depositions, submitted false Statements of Financial Affairs, and generated fraudulent documents to support his misrepresentations.  Id. (quoting Plea Agreement).  Upon discovery of Fabian's fraudulent practices, Guttman referred the matter to the United States Attorney for potential criminal prosecution.

Fabian was indicted by a Federal grand jury on August 8, 2007.  United States v. Fabian, Crim. No. CCB-07-0355.  The indictment included nine counts of mail fraud, nine counts of

engaging in monetary transactions with proceeds of specified unlawful activity, two counts of bankruptcy fraud, two counts of perjury and one count of obstruction of justice. The indictment was later superseded to add two counts of filing false income tax returns and one count of making a false statement to the Internal Revenue Service. In June 2008, Fabian pleaded guilty to one count of mail fraud and one count of making and subscribing a false tax return. In the Plea Agreement, Fabian fully acknowledged the fraudulent nature of SPI's transactions and dealings. On October 31, 2008, Fabian was sentenced to 108 months of imprisonment and was ordered to pay restitution in the amount of $40,162,633.82.

On December 31, 2008, Fabian filed a voluntary Chapter 7 bankruptcy petition. On June 30, 2009, Guttman, as Trustee of the SPI bankruptcy estate, filed a four-count complaint (the Complaint) pursuant to §§ 523(a)(2)(A), (a)(4) and (a)(6) and 548(a), to determine the non-dischargeability of debt related to the five Remaining Proceedings. Adversary Proceeding No. 09-443. The Complaint alleged that the transfers at issue here were made with actual fraudulent intent, based upon (1) Fabian's admissions contained in the Plea Agreement and (2) upon the Trustee's proof of the allegations contained in the Remaining Proceedings. The Bankruptcy Court conducted a trial on the merits on December 6, 2010, and issued an oral opinion granting

judgment for Guttman and instructing Guttman to further brief the issue of the amount of damages to be awarded against Fabian. Guttman submitted his memorandum, Fabian filed objections to that memorandum, and on September 13, 2011, the Bankruptcy Court issued an opinion granting a non-dischargeable judgment against Fabian in the amount of $3,046,644.00.  Significantly, the Bankruptcy Court limited its judgment to just one count of one of the Remaining Proceedings: Count 2 of Adversary Proceeding No. 06-1319 (Remaining Proceeding No. 1), a claim which alleged that 60 fraudulent transfers were made from SPI to Fabian's accounts between November 2002 and July 2004.  The other Remaining Proceedings were not considered either because they involved nondebtors over which the Bankruptcy Court had no jurisdiction or were duplicative.

It is from that September 13, 2011, order that Fabian filed this appeal.

**II. STANDARD OF REVIEW**

This Court reviews the legal conclusions of the Bankruptcy Court de novo, but reviews its factual determinations for clear error.  Butler v. Shaw, 72 F.3d 437, 441 (4th Cir. 1996); Bankr. R. 8013.  On legal issues, this Court "must make an independent determination of the applicable law."  In re Jeffrey Bigelow Design Group, Inc., 127 B.R. 580, 582 (D. Md. 1991). Moreover, a finding of fact is clearly erroneous "only when the

reviewing court is left with the definite and firm conviction that a mistake has been committed." In re Broyles, 55 F.3d 980, 983 (4th Cir. 1995) (internal quotations omitted).  Finally, the Bankruptcy Court's application of law to the facts is to be reviewed for abuse of discretion.  In re Robbins, 964 F.2d 342, 345 (4th Cir. 1992) (decision to lift automatic stay).

## III. DISCUSSION

Fabian raises five primary arguments on appeal: (1) he was denied due process because he was denied fair notice and opportunity to present evidence; (2) pursuant to the criminal forfeiture proceedings and the "relation back" doctrine, the proceeds of the fraud were the property of Fabian and not SPI; (3) there was insufficient evidence of actual fraud to satisfy § 523(a)(2)(A); (4) there was insufficient evidence of actual fraud to satisfy § 549(a)(1); and (5) the bankruptcy court erred in interpreting the requirements for willful and malicious injury under § 523(a)(6).

### A. Denial of Due Process

As the basis of his claim that he was deprived of due process, Fabian characterizes the Complaint as one relating only to claims of debts owed to and fraud committed against SPI.  See ECF No. 9 at 11, 14.  Fabian characterizes the Remaining Proceedings as relating to claims of debts owed to and fraud committed against SPI's bankruptcy estate and creditors.  Id. at

6

11. He then concludes that the Complaint "provided no notice to Fabian that he would need to defend against allegations he defrauded the Trustee or SPI's creditors." Id. at 14. While he acknowledges that the Trustee incorporated the factual allegations from the Remaining Proceedings in the Complaint, he nonetheless argues that because the counts in the Complaint "did not include charges against SPI's Creditors," he was "without notice that he would have to defend the Remaining Proceedings." Id. at 11. Furthermore, he asserts that he was precluded from introducing evidence concerning the allegations in the Remaining Proceedings.

The distinction that Fabian attempts to construct is a distinction without a difference. To the extent that Fabian defrauded SPI and depleted its resources, by necessity, he depleted the resources available to SPI's creditors and thus defrauded those creditors. As to his assertion that he was prevented from introducing evidence related to the Remaining Proceedings, that assertion is simply inaccurate. The Bankruptcy Court limited the basis for its non-dischargeable judgment to the 60 fraudulent transfers from SPI to Fabian set out in Count 2 of Remaining Proceeding No. 1. Fabian submitted evidence, including a report from the accounting firm, Invotex Group, which he used in his attempt to challenge that those transfers were fraudulent and to support his claim that he had

7

repaid everything to SPI. See Adversary Proceeding No. 09-443, ECF No. 72; Fabian Ex. No. 10. Given that Fabian's Plea Agreement included details concerning Fabian's creation of false documentation to support non-existent transfers, it is not surprising that his challenge was unsuccessful. While he was unsuccessful in his attempt to convince the Bankruptcy Court of the truth of his contentions, he certainly had notice of and the opportunity to rebut the claims against him on which the Bankruptcy Court's judgment was based.

### B. Applicability of the Relation Back Doctrine

As he did before the Bankruptcy Court, Fabian argues that, under the relation back doctrine, assets subject to the forfeiture order in the criminal action never became property of SPI's bankruptcy estate and, thus, those assets cannot be recovered by the Trustee. Fabian opines that the means for SPI to have asserted its rights was to have filed a claim in the forfeiture proceeding. He notes that Guttman, as Trustee of the SPI estate, did object to the government's motion for final order of forfeiture in the criminal case and that this Court ruled that the Trustee's claim was untimely. The relevant facts related to the forfeiture action are as follows.

On October 24, 2008, Judge Catherine Blake of this Court entered a Preliminary Forfeiture Order in the criminal action. Crim. No. CCB-07-0355, ECF No. 116. That order related that as

at least $20 million had been derived as proceeds of the offense and as that $20 million no longer existed as money proceeds, Fabian's interest in certain substitute assets would be forfeited.  Those specified assets to be forfeited included three automobiles, several beach properties, the assets of a limited liability company and funds that were net proceeds of the sale of certain real estate that were being held in the name of the Clerk of the Court.  Id.  On May 13, 2009, the government filed a Motion for Restitution Order and Final Order of Forfeiture, Id., ECF No. 153, based upon a settlement agreement reached between Fabian, Fabian's wife, and the government. Guttman objected to that motion, but Judge Blake found that his objection was untimely.  Judge Blake then issued an Order of Restitution and Forfeiture: releasing the cars, the beach property and $60,555.11 of currency to JATAP Group LLC;[1] releasing $37,500 of currency held by the U.S. Marshal Service from the sale of one of the beach properties and $147,000 of currency held by the Clerk of the Court to be applied to the restitution order; and further ordering that Fabian pay to the government a "money judgment" of $20,000,000.  Id., ECF No. 159.

As this history reveals, the Order of Restitution and Forfeiture does not apply to the assets as issue in this case,

---

[1] JATAP Group, LLC is, according to the Trustee, an organization controlled by Fabian's wife.  See id., ECF No. 155 at 7.

but to a different set of designated assets. Thus, the decisions relied upon by Fabian in support of his argument are inapposite. For example, in United States v. Zaccagnino, Civ. No. 03-10095, 2006 WL 1005042 (C.D. Ill. Apr. 18, 2006), which Fabian asserts in his Reply is "almost identical to [his] case," ECF No. 15 at 4, the court did hold that "[o]nce the Government wins a judgment of forfeiture, the relation-back doctrine provides that the right, title, and interest in the forfeited property vests in the United States at the time the defendant committed the offense that gives rise to the forfeiture." Id. at *3 (emphasis added). In Zaccagnino, however, the forfeiture order related to specific funds transferred to a Swiss bank from the corporate entity employed by the criminal defendants in their fraudulent scheme. It was those specific funds held in the Swiss bank account that the Trustee for the corporate entity's bankruptcy estate sought to recover and that the court held, by operation of the forfeiture order and under the relation-back doctrine, never became a part of the corporation's bankruptcy estate. See also, United States v. Pelullo, 178 F.3d 196 (3rd Cir. 1999) (holding that a particular piece of real estate, the criminal defendant's residence, specified in the forfeiture order vested in the government at the time of the criminal activity).

## C. Proof of Actual Fraud Under § 523(a)(2)(A) and § 548(a)(1) and Willful and Malicious Injury Under § 523(a)(6)[2]

Fabian's remaining three arguments are closely related and readily dismissed.  He begins by criticizing the Bankruptcy Court's reliance on his own Plea Agreement and the incorporated Statement of Facts, noting that they were "not sworn statements under the penalty of perjury.  They merely state that for purposes of the plea Fabian had voluntarily signed it, agreed to it, and did not wish to change it."  ECF No. 9 at 20 (emphasis in original).  He then suggests that his previous statements made in conjunction with his guilty plea "should not be sufficient to override Fabian's testimony at the trial which was entered and sworn under the penalty of perjury."  Id. at 20-21.

Fabian appears to be correct that his Plea Agreement and the incorporated Statement of Facts do not contain the words, "sworn to under penalty of perjury."  Fabian's argument from

---

[2] Section 523(a)(2) provides that "a discharge under . . . this title does not discharge an individual debtor from any debt . . . to the extent obtained by . . . actual fraud . . . [and for] embezzlement, or larceny . . . [and for] willful and malicious injury by the debtor." 11 U.S.C. §§ 523(a)(2); 523(a)(4); and 523(a)(6).  Section § 548(a)(1) states in pertinent part: "The trustee may avoid any transfer . . . of an interest of the debtor in property . . . if the debtor voluntarily or involuntarily (A) made such transfer . . . with actual intent to hinder, delay or defraud any entity to which the debtor was or became, on or after the date that such transfer was made . . . indebted…".

that observation, however, is fundamentally flawed.[3] Fabian made admissions in his Plea Agreement that he knew would result in a criminal conviction with a significant period of incarceration and other penalties. To suggest that the Bankruptcy Court should have somehow credited the completely contradictory statements made by Fabian in the trial of this matter because they were made under penalty of perjury, and thus might subject him to <u>potential</u> criminal prosecution, is preposterous. This argument serves only to remove the Court's ability to ascribe any credibility to Mr. Fabian's assertions.

After having the opportunity to judge Fabian's credibility while observing his demeanor on the witness stand at trial in open court on the record, the Bankruptcy Court concluded that Fabian's testimony lacked credibility: "It was unbelievable, though practiced and smooth. He was unremorseful and self-serving. It was the testimony of a self-confessed felon, whose penchant for truthfulness has been proven to be nonexistent." 458 B.R. at 266. Relying instead on the facts admitted by Fabian in entering his guilty plea and the other evidence submitted at trial, the Bankruptcy Court had no difficulty in

---

[3] This Court also notes that when Fabian appeared in Court to enter his guilty plea he did answer affirmatively, under oath, that the Statement of Facts was "an accurate summary of the facts in the case," and that he "agree[d] to each and every word of the statement of facts." Crim. No. CCB-07-355, June 29, 2011, Plea Transcript, ECF No. 211 at 43-44.

concluding the Fabian made the transfers in question with actual fraudulent intent within the meaning of §§ 523(a)(2)(A) and 548(a)(1).  This Court will not disturb those factual findings.

With regard to Fabian's contention that the Bankruptcy Court made a mistake of law in interpreting the "willful and malicious injury" requirement of 11 U.S.C. § 523(a)(6), the Court also finds no merit.  Citing Kawaauhau v. Geiger, 523 U.S. 57 (1988), Fabian attempts to separate a "deliberate or intentional act that leads to injury" from a "deliberate or intentional injury."  ECF No. 9 at 28.  Geiger addressed the question of whether an award in a medical malpractice case was dischargeable under § 523(a)(6).  After the physician against whom the award was granted filed for bankruptcy, the injured patient and her spouse moved to have the award deemed non-dischargeable.  They argued that, because the physician made an intentional choice to render the specific medical treatment that led to the injury, the debt was non-dischargeable.  Id. at 61.  The Supreme Court rejected that argument, observing that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."  Id. (emphasis in original).

A physician, of course, could intend to pursue a certain course of treatment but have no intention of causing the injury

13

that happened to follow from that course of treatment.  Here, however, Fabian could not intend the act without not also intending the consequences of that act.  The Bankruptcy Court found, based upon the Plea Agreement and other evidence, that Fabian intentionally transferred funds from SPI to himself with no intention to repay those funds.  Those intentional acts, by necessity, would harm SPI and its creditors.  Intending the act in this context is intending the injury and to argue otherwise is pure sophistry.

    Finding no merit, whatsoever, to Fabian's current contentions, this Court will affirm the ruling of the Bankruptcy Court.  A separate order will issue.


                                         _____/s/_____
                                        William M. Nickerson
                                        Senior United States District Judge


DATED: July 19, 2012